Good morning, I'm Cindy Rhodes, Victor for the Appellant. May I reserve three minutes for rebuttal? May it please the Court. We believe the District Court erred when it found that the Federal Credit Union Act controlled over State law. The 2812 U.S.C. Section 1787 only applies to the NCUA Board as a liquidating agent for Federal Credit Unions. It is not under a State order of a State agency to act as a conservator under State law. So I agree that that's the way it entered, but I don't read 1787 as being only limited to Federal Credit Agencies. It seems to me that there's other provisions in 1787 later clear that the Board has the authority to issue an order finding a Board-insured State credit agency as being in financial trouble and being able to issue an order in cooperation with State authorities. Your Honor, that is correct, but it doesn't apply here. So in that case, if you're in front of the NCUA, if you're a State credit union that's Federally insured, and you're in front of them because of something you've done with your Federal insurance, they have the right to act as the agency, in essence, to take certain steps. That is not the factual situation here. What is the factual? I agree that it seems like they are the ones who are supposed to initiate things and then coordinate with the State. Correct. And that did not happen. In this case, just plain and simple, if you think about it in a bankruptcy analogy, the State agency brought in the NCUA as a receiver or as a State court receiver. And that's actually the word, you know, conservator is the word that they use. They brought them in to act like a State court receiver would to bring the assets together and do what's necessary. And the order that gave them that didn't rely on the Federal Credit Union Act, didn't in the State agency order that says, we think there's a problem with how the Federal insurance is going. It related solely to administration of it under State law. So that then takes you to where the Federal Credit Union Act doesn't apply here. If it did, it would apply to everything. We wouldn't have any State acts. In fact, if you look at 12 U.S.C. section 1771A4, it says, upon ceasing to be a Federal credit union, such credit union is no longer subject to any provisions of this chapter. And that includes the earlier provision we were talking about under 1787. So the entire chapter doesn't apply. You've got specific language that says it doesn't apply if you cease being a Federal credit union. At this point, this was never a Federal credit union. This has always been a State charter. So even if State law applied, we'd look to State law, wouldn't we? And State law, Michigan law seems to incorporate Federal law. It says the receiver provisions 490.231-2, or the receiver of a domestic credit union, which happened here, the receivership procedures of the Federal agencies shall govern the receivership. That suggests to me that State law is incorporating the B-5 process for submitting claims. I don't disagree that that might be a reading of it. But that wasn't what the court, the district court, based Well, but the district court, I mean, we can affirm the district court Right. But if you go to the B-5 procedure, here that doesn't apply because the B-5 procedure, again analogizing it to a bankruptcy matter, the B-5 procedure is initiated by the agency taking various steps, contacting the creditors, letting them know they have time for proof of claim. You're disputing the fact that they didn't There's nothing in the record that supports that they did. You have the right to appeal. So you submitted a claim in the B-5 process. They denied it as untimely because you received notice. Your response is I didn't receive notice. That process gives you a right to appeal the finding of a lack of notice. But in this case, by that time, by the time they do it, the notice of now it's untimely is sort of an after the fact. What we did was we proceeded under the, there was no notice that said you have to file this in this time. So what we did is Mr. Perna went to the Wage and Hour Board. And at that time, and understand the NCUA was there, the Health Unit 1 Credit Union, and represented by counsel. They were represented by Miller Canfield. At no time was this raised, never as a defense, which is kind of why waiver goes through this in a great deal. Instead, the Wage and Hour Board came forward with no dispute from the Health 1 and said this matter needs to be arbitrated. So that's exactly what we did. And there's nothing in the claims procedure that prevents that from happening. There's nothing, in fact, if you look at the Act, the Act says that there are claims that you can make a claim for damages from repudiation if that's in fact what they did here properly. And so what we've done is follow, in essence, what another state agency said was needed to be correct. Now at no time, when you get that ruling from the Michigan Wage and Hour Board that says this matter needs to be arbitrated, does the NCUA or Health 1 Credit Union say no, we shouldn't even be here, this is only governed by a claims policy. And they don't turn around and say, Mr. Perna, you're a creditor or a potential creditor, here's what you need to make a claim. So for them to then say later on, oh wait, you're precluded, it's the same as in a bankruptcy petition. If you don't list a creditor and then you're discharged and the creditor tries to collect, you can't say, well, I was bankrupt and I discharged all my debts. You didn't include me. And that's what happened with At no time can they say that he was included or given notice. There's not a single shred of evidence in this record that said he was given notice. So is your argument then, so you concede that that state law provision I read to you incorporates the B-5 process, but your response is that the B-5 process wasn't adequately satisfied because of the lack of notice? I don't believe that it incorporates the B-5 process. Why not? What's your best argument for why that language, which seems to me to say you're supposed to follow the federal procedures, would not incorporate? Because you're talking about the receiver order, and this happened under the conservator order. Well, fair enough, but And they're completely different. That language does not appear in the conservator order. I agree with that, but then they became a receiver in December of 2014. Correct, but his claim had already accrued, and the action had taken place not in the receivership, but in the conservatorship. But my point is that once the receivership happened in December of 2014, that immediately triggered the federal claims process. So even if before December 2014 you would have had an argument that state law allows you to use state court or other process, once the receivership order came in place and you hadn't used those processes, at that point I would think that it would trigger the B-5. But even if it triggered it, and I know my time is limited, so even if it were to have triggered it at that time, we don't think those are the processes to which they're relating. We think that the state court receivers order provides for such additional things that are different from federal processes that the court, that the receiver order did not intend to trigger. But even assuming that, Your Honor, you're correct, and to go from that point, at that point, if things changed, it was incumbent not upon my client, but upon this side to say this has changed and now you need to take A, B, and C action. And they did not do so. And what's very important here is what has proceeded hereafter. And this is clearly a situation of waiver. Because you have a situation where you get an arbitration claim and the response by the NCUA is not, you're out of time, you should have done a B-5, you know, claims procedure or maybe, you know, here's the way you need to appeal it. They said, we're not getting involved because we repudiated the contract. We're not doing this. And they didn't participate in any way. And actually, Judge Donald, you were a part of a panel that considered a similar issue in, and this is when I grabbed the wrong piece of paper, in Barrick Enterprise versus Crescent Petroleum Incorporated. And it says that parties in arbitration waive their right to complain about defects in the process if the objections are not raised at the time. That's what we're saying here. And that's, I'll give you the citation, it's 496 FED APP Act 614. It's a 2012 case. In this case, these parties said, you know, we don't need to participate because this is basically over. I mean, the contract is not, you know, it's not there anymore and there's no reason for us to participate in this. But, Judge Donald, the statute actually provides for claims for damages for doing exactly what they did when they repudiated. For them to say, well, the contract's dead. We've repudiated it. It doesn't, A, eliminate the claim for damages. And it doesn't, B, eliminate the arbitration claim. And we've cited in our brief a tremendous amount of authority that says arbitration claims survive repudiation. And in this case, that's the situation. So you think that the, setting aside the weird wrinkles of how they were appointed, if this was a federal credit agency and the federal credit agency had some type of arbitration clause in a contract with an employee, I would think the repudiation principles of 1787 would allow them to repudiate an arbitration provision. If they specifically repudiated an arbitration provision. But they didn't here. They simply said, you're out. You're not working here anymore. The letter to them did say, I mean, it sounded like they were unclear whether you had an employment contract. But it did say it repudiated the employment contract. And I would interpret that to include all provisions of the contract. Correct. Except, Your Honor, there is case law that we cited in our brief that says a repudiation of an employment contract does not include the arbitration provision. That's not case law interpreting 1787. No, it is not. There's very little case law. This is a really almost first impression case in a lot of ways. And in fact, you have an issue which, you've got a subject matter jurisdiction issue here. The court said we don't have jurisdiction because the Federal Act controls, the Federal Credit Union Act controls. We don't believe that's the case. But you may have an issue here where subject matter doesn't apply even at all. And this is one where subject matter can be brought up at any time. And in reviewing cases, the case that Judge Sir Heinrich wrote the opinion of in Collins v. Blue Cross Blue Shield, in 103 F. 3rd 35, says a case like this where we didn't say that we asked to have it removed. We didn't say in our complaint to confirm that there was any Federal question. They removed it based on that we're a Federal, we have a Federal question here. This is not a diversity case. There may not even be subject matter jurisdiction to start with. So that's, in that case, it even makes the provision of the Federal, applying a Federal Credit Union Act to a State Credit Union, these kind of circumstances just not to apply. Are there any other questions? I see my time is up and I've had so much more I wanted to say, as we all do here. Thank you. I'll be back for rebuttal. Good morning, Your Honors. Emily Palacios on behalf of the National Credit Union Administration Board as liquidating agent and in its corporate capacity with me at the table is Robert Robine, an attorney with the National Credit Union Administration. I want to start by reminding the Court that the District Court reached the right conclusion in this case. It went for the most consequential issue that was presented in the briefs, and that was the question of whether or not the Court had jurisdiction to entertain the plaintiff's claims with respect to this arbitration award it obtained approximately four years after Health Law and Credit Union was put into a conservatorship and roughly three and a half years after it was put into liquidating agent. Your argument is that there's no jurisdiction, but you're the one who removed it. We did, as a federal question. There is a federal question. The plaintiff disputes that federal law applies. Is it strange? It just seems strange to me to, in order to remove a case, the Court has to have jurisdiction. So you removed the case and you're saying the Court has no jurisdiction? We also removed the case on federal agency jurisdiction. So there were alternate bases for federal jurisdiction, one being federal question jurisdiction. I guess it's almost like a chicken and egg problem, but if 1787B says you have no jurisdiction over this type of claim, doesn't that mean removal might be? Well, so the section 1787B.13.d is a limitation on jurisdiction that is very particular with respect to the review of the claim. It is a review of claims with respect to claims that are made after the appointment of the liquidating agent. And I think that plaintiff has presented her claims in the position of these are claims that arise from the appointment of the NCA Board as conservators. So claims that would predate. But I think that the District Court reached the correct conclusion that, in fact, this is a claim that arises after the appointment of the liquidating agent. And, therefore, when you look to the statute and you consider the question of whether or not the Court has jurisdiction, the Court finds correctly that it does not have jurisdiction to review this claim. That this claim, like any claim that is presented with respect to a claim for payment from assets of a liquidated credit union, or a claim that relates to an act or an omission of the Board as it's acting as a liquidating credit union, has to be first presented to the NCA Board through the administrative claims procedure that's laid out at 1787B5. And that is especially true of contracts that have been repudiated. Section 1787C7A, which is a follow-on section to the contract repudiation procedures, specifically addresses service contracts, those being contracts that are entered into between a person and an insured credit union, another very significant term, because what we are dealing with here is an insured credit union. The Act at this point is not distinguishing between a federally chartered credit union or a state chartered credit union. It's just an insured credit union. And that section of the statute specifically provides that claims related to a repudiated service contract must be processed through 1787B. And so you step back and you say, well, was the claim presented during the conservatorship or was the claim presented during the period in which the liquidating agent was appointed? I think that relates to a question I had, and that's the question, so what grounds are there for this Court to find that the Federal Credit Union Act's provisions regarding repudiating actually preempt the Federal Arbitration Act's provisions forbidding judicial review of the validity of the arbitration to begin with? We have addressed that in the alternative because it had first determined that it did not have jurisdiction to further review the question of the enforceability of this arbitration award that Mr. Perna obtained and didn't have jurisdiction to further review the modification of the award, which most importantly Mr. Perna requested because he essentially got an arbitration award against a credit union that no longer exists. That's the problem. Your Honor, if you might restate the very end of your question because I think I just added a fact that I thought might be useful to you, but I think it also made me lose track. What grounds are there for this Court to find that the Federal Credit Union Act's provisions regarding repudiation actually preempt the Federal Arbitration Act's provisions that forbid judicial review of the validity of the agreement? So there's two bases for that. One is the basis that the District Court discussed in its alternative holding, which is that this claim to enforce or modify the arbitration award is itself a claim against the credit union's asset, which is a claim because it was made after the appointment of the liquidating agent, would have to go through the administrative review procedures of 1785B. On the other hand, other courts that have looked at the question have determined that when you consider the purposes of the Federal Credit Union Act, particularly those provisions that go to the liquidation of a credit union, and you look at the way in which arbitrations are conducted, you see tension between the two acts. The purpose of the administrative claims review provision in the Federal Credit Union Act is to put creditors on equal footing and to provide for a timely and succinct adjudication of claims against the credit union so that the liquidating agent can determine what is a fair meeting of the credit union's liabilities amongst its various creditors. And if you have people going off and conducting private arbitrations, then you completely undermine that Federal preference for there to be uniform administrative review of competing claims by creditors who should remain on equal footing during this process. And so the courts that have looked at this, including the Northern District of Ohio, have concluded that when there is a conflict such as the one we have in this case between the FCUA and the FAA, the FCUA must trump because of its more specific procedures that relate directly to the congressional objectives that the act is intended to achieve. That's assuming the FCUA applies, but it seems like this is an unusual case from the way I read the statute because I readily concede that the statute should apply to state-insured entities. But the way the statute seems to work is that the board itself is supposed to determine  and then it triggers the 1790D provisions, which allow it to coordinate with the state entities. But here it seems a little different. Here it seems like what happened is the state entity is the one who found, made the determination that the credit union was in trouble, and then it had the option under state law to hire a private conservator, a private person, or the NCUA. And the NCUA board is acting more as a state agent and following state law than it would be if it had invoked its own powers under 1790D. So I question whether, even if a state-insured credit union would be subject to this act, if the act was invoked by the board, why should it be subject to the act when it's the state entity that brought NCUA in? It's by virtue of the fact that Health One Credit Union was a federally insured credit union. And that gives rise to a certain set of powers on the part of the NCUA board when it's appointed as conservator or it's appointed as liquidating agent. But what if state law had said, it's definitely federally insured, but what if state law had said for all domestic credit unions, even insured ones, no conservator that the state decides to appoint can repudiate contracts? It would seem to me that if all you were doing was acting under the state law rather than independently asserting your own powers under the federal law, that that provision would apply. And that seems to me to be what happened here, because NCUA didn't come in on its own and trigger its own powers. It only came in because the Michigan Department of Insurance said, this credit union was in trouble and we need to find a conservator. And we can pick all sorts of, we could pick a private conservator, we could pick any conservator we want, but we decided to pick NCUA. The NCUA conservator is picked because they are the agent of the share insurance program, just like the FDIC is the agent for depository insurance programs. And so there is a tie there that's more than happenstance. And I think the question of just how the NCUA got appointed is a bit beyond what the claims that the... Well, their point is that... I understand their point, but my point, my response would be that the order that was issued by the state of Michigan identified the credit union as being federally insured. If you look to the federal statute, when the NCUA board steps in as a conservator on behalf of an insured credit union, and that's the provisions that we're addressing here over and over and over, is this is when they're stepping in as the conservator of an insured credit union, irrespective of how they were appointed, they have certain powers and rights. And then you turn to section 1787J, and it makes clear that not only does the NCUA board as liquidating agent and conservator have those rights that arise under federal law, but they have any other rights that might arise under state law. And that really the idea behind the statute is that the NCUA board, when it comes in and acts as conservator or liquidating agent, has the full power granted to it by the federal government and the state government in which it's acting to carry out the goals and objectives of the shared insurance program as well as the Michigan law with respect to the administration of credit unions. You could also read 1787J to say when you're acting on behalf of a state insured or a federally insured state incorporated domestic credit union, you should be following state law. You interpret it as we have all these federal powers and any additional state law powers, but I'm not certain it has to be interpreted that way. You could also interpret it to say we want to protect state law, and so give the NCUA board the powers that only state law allows receivers to have. I think that in Congress's authority is to grant through federal legislation certain federal powers. If it wanted to append certain state powers automatically onto the agency, it would need to do that through the statute. I believe that's what 1787J achieves. It appends certain federally created powers and rights, state powers and rights, so that the conservator or liquidating agent is operating under the full scope of the laws that would be available to it in the jurisdiction in which it is operating, both state law and federal law. If there were a conflict between state law and federal law, then federal law would prevail. I think here when it comes to the repudiation, and if you look at the repudiation letter that was sent to or hand-delivered by the conservator to Mr. Perna, it not only references the standards for repudiation underneath the FCUA, but it also references a standard underneath the order appointing conservator, which is essentially that they've determined that this action is in the best interest of the credit union. So certainly when the conservator took the action he did, he rooted it in both his federal statutory rights and authority and authority arising directly under the order of conservator. Can I ask a question about jurisdiction? I guess, so you have three bases of jurisdiction. Don't you think it's at least arguable that the, so just going through the bases, the first one would be under the NCUA itself, the provision that gives the NCUA board the right to sue and be sued in federal court. There's the exception that you mentioned. The exception says except in a suit between a creditor and a state-created credit union. Isn't that what this is? It's a suit between Perna acting as a creditor and a state-created credit union. A suit involving the application of state law. Which it is. He's saying the employment contract is still enforceable and I'm suing under my rights under the employment contract. And the NCUA is saying that that is actually a question of federal law, not state law, and the federal courts are an appropriate venue to take questions of federal law for decision. It is a matter of federal law that the NCUA had the right to repudiate this contract under sections of DA 7. That's your federal defense. The cause of action, isn't the cause of action at least a state law cause of action? Let me follow your question here just for a minute. The, I don't believe that it is. I don't believe it is. And again, as I stated earlier, we have alternative bases for jurisdiction here. And it was also the fact that a federal agency is a party to the suit. The lower court made it a party to the suit. So, in addition to federal question, and I will stand by the argument that I believe that even the plaintiff's claims, though they are cast as if they are arising under state law, actually arise under federal law. Because in order to determine whether action is taken by a conservator, the NCUA being appointed as a conservator or a liquidating agent, are actions that have to be measured under federal law. And not solely under state law. So, I think that also addresses the jurisdiction question. Any further questions? Thank you. Thank you. Inspector, you're. Thank you. I'm going to go serve in reverse order. With respect to the issue that plaintiff's claims arose under federal law, that's not true. His premise is real simple. Permanent employment agreement was terminated. He's entitled to severance when that happens. He didn't dispute whether it was right or wrong termination. We moved on that. We just were going after the severance. That's all it was. It arose under, as you accurately pointed out, Judge Murphy, it arose under state law. That's all we ever alleged. Under state contract law. There is no federal contract law. It's state contract law. To go to the issue of repudiation, they keep talking about that they have the power to repudiate as if there were no consequences. But the very act that they say that the judge correctly applied, applies for damages. In 17, excuse me, the actual statute says, except as otherwise provided, and that doesn't apply, the liability of the conservator or liquidating agent for the disaffirmance or repudiation of any contract shall be limited to actual direct compensatory damages and determined as of the date of the appointment of the conservator or liquidating agent. So it says right in there, NCUA, as conservator or liquidating agent, is responsible for actual damages if they repudiate. That's what the arbitration was about. They repudiate. You know, we are liable for damages. The arbitration happened. And they are liable. NCUA is liable. It's right in the Federal Credit Union Act statute that they are liable.  That's not what the arbitrator said. No, no, no. The arbitrator didn't. No, I agree. That's why we actually asked to have it modified. But the arbitrator was wrong there. He didn't understand that provision. And so I believe that that's correct. If you note in our appeal, we moved to affirm and modify saying that it's, that the NCUA is responsible. Why would the NCUA be on the hook? Wouldn't the successor and interest be on the hook? No, actually that's because. Wasn't it the New England? I thought the New England Credit Union. They bought the assets but not the liabilities. It was an asset purchase. But that's what the statute says. Why would they be responsible? Because if they're in here saying the Federal Credit Union Act applies, then they are responsible because it says it in black and white in the statute that they're liable. You don't just repudiate and walk away laughing. You mentioned bankruptcy. You're supposed to do this in an orderly fashion. And the orderly fashion is the B-5 claims process. Everybody brings their claims in. You look how much the liquidated entity, how much money it has, and you divvy it up among the creditors. You kind of went outside that process. And now way after the fact, everything is done. And you're asking for money from the funds that no longer even exist. I wish it were that way, Your Honor, but that's not how it happened. And because that B-5 procedure doesn't trigger, they're required to give us notice. And we detailed this in our reply brief on pages 14 through 28. But the statute requires in 12 U.S.C. 1787, B-3C, they have to send a notice to a creditor that says, there's this and here's your last day for a claim. While they're claiming that there's no evidence in the record that they did it. And they never claimed that they did that. None whatsoever. They never sent notice to him as a creditor. So while they're talking about we have this orderly fashion and here's how it's supposed to handle, they didn't tell him as they're statutorily required. So Mr. Perna goes to wage and hour. At wage and hour, where they had a chance to say, wait, we need an orderly distribution. It's got to go through a B-5 process. Their defense is there's an arbitration claim in the agreement. And the wage and hour board agrees and it has to be arbitrated. So then we go to the next step of arbitration. So had they sent, this is on their head. You need to finish up your sentence because you're live. Because had they sent that notice, trust me, Mr. Perna would not have wasted time and energy and fees proceeding through all these other paths. It's on their head for not sending him notice as a creditor. Thank you. The statute requires. Thank you. All right. The matter is submitted and you will receive a decision in due course. The other cases are on the briefs. The clerk may adjourn court.